# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ASSOCIATION OF AMERICAN PUBLISHERS, | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| v. | * | Civil Action No.: |
| | * | 1:21-CV-03133-DLB |
| BRIAN E. FROSH, Attorney General of the State of Maryland | * | |
| | * | |
| *Defendant.* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

**DECLARATION OF ALAN INOUYE**

I, Alan Inouye, state as follows:

1. I am over 18 years of age, a resident of the District of Columbia, competent to testify, and have personal knowledge of the facts and matters set forth herein.

2. I hold a Ph.D. from the University of California, Berkeley. My doctoral work emphasized information science, public policy, economics, organization theory, and library science. I have three Master's Degrees in business administration (finance), systems engineering, and computer science.

3. I am employed by the American Library Association (ALA), and my position is Senior Director of Public Policy & Government Relations in the Public Policy & Advocacy office. I lead public policy formulation and strategy as well as advocacy, lobbying, and national initiatives for the ALA's broad portfolio on the knowledge society. In this role, I manage national advisory committees on policy, legislation and library services. My policy work involves copyright and

1

licensing.  My policy work also focuses on new models for accessing & using digital information and telecommunications.  My policy work also involves using IT to advance entrepreneurship, education, learning, research, development, and government services.

4. From 2004-2007, I was the Coordinator of the Information Technology Subcommittee for the President's Council of Advisors on Science & Technology within the Executive Office of the President.  In that role, I oversaw and conducted background research, production, and release of published reports of the President's Information Technology Advisory Committee.  I also served as Coordinator of the Cyber Security and Information Assurance Interagency Working Group of the National Science and Technology Council.

5. Established in 1876, the American Library Association (ALA) is the largest library association in the world and represents the 117,000 libraries in the United States.  On behalf of the ALA, I prepared a letter in support of the Maryland Act.  (See Attachment - December 16, 2021 American Library Association letter addressed to Attorney General for Maryland Brian E. Frosh).

6. For centuries, libraries have partnered with publishers to provide the public with broad access to books and other physical media. Now, public libraries require access to digital content to fulfill their mission of providing the public with equitable access to information. While libraries continue to provide access to print materials, the demand for access to digital content has increased. Access to library materials plays a critical role for members of the community in advancing education and learning, economic opportunity, civic engagement, and managing daily life tasks. Library digital book lending is important for equity: for older adults, children, people with disabilities, and people in rural areas.

7. Print and digital media (e.g., books) are not interchangeable. Older Americans, people with disabilities, and others may find digital books to be more accessible and manageable

than print books, as digital books allow for print size adjustments and other key features to better accommodate accessibility needs. And of course, digital books may be accessed without a physical visit to a library. As we've seen during the COVID-19 pandemic, this remote access can be essential when the library building is closed to the public.  Digital books are also expected to improve in functionality, leveraging future advances in digital technologies, whereas print books are a stable format. Thus, libraries—and therefore library users—should not be excluded from a class of materials (digital), especially for children and those community members who cannot afford to purchase their own digital content and solely rely on libraries for access.

8. Libraries only request access to digital content at reasonable terms, which they have not been granted thus far. Without Maryland's important law, future prospects for digital access at reasonable terms for libraries in Maryland will be dimmed.

9. In its Complaint, at ¶68, page 21 the Association of American Publishers (AAP) asserts that AAP's largest members already make their full digital catalogs available to public libraries across the country.  This is untrue.  It is true, as Maria Pallante states in ¶15 of her Declaration in Support of the Motion for Preliminary Injunction, that Maryland had over four million digital checkouts in Maryland's Digital eLibrary Consortium.  This demonstrates the ability for publishers and Maryland libraries to enter into licenses.

10. Many digital titles are not available to public libraries. In particular, a great swath of digital audio books is currently not available to libraries, at any price or terms. But there are also ebooks that are not available to libraries, or are only minimally available (e.g., in the past several months, Amazon has begun to make its published ebook titles available only through a platform which most public libraries, and their users, are unfamiliar). And even for the access that

is accorded to libraries, the terms are frequently radically inferior as compared to the terms offered for print books such that ALA asserts that the terms are not reasonable.

11. During portions of the last decade, some publishers, such as Simon & Schuster and Macmillan Publishers, did not make their digital books available to public libraries at all, at any price or terms. In particular, Macmillan Publishers and Simon & Schuster did not provide any digital book access to public libraries until 2013. In 2019, Macmillan Publishers instituted an embargo on libraries, such that libraries were required to wait eight weeks after release to the consumer before they could purchase copies of ebooks. This embargo was rescinded in 2020 after intense public pressure.

12. On page 10, of AAP's Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, AAP says that most publishers already make their full digital catalogs available to libraries in Maryland. If, for the sake of argument, we accepted this assertion then those publishers have no grounds for saying that they are being forced to license to libraries. In any case, the new law is needed to prevent publishers from changing terms abruptly and implementing additional barriers to libraries' access to digital works, as we have seen over the past decade. Without the new law, radical changes in terms can be introduced with no recourse by libraries—such changes include the possibility of simply embargoing libraries completely from all digital content, at any price or terms, which would be patently "not reasonable."

13. The market failure described above is further aggravated by foreign decision-making on the availability and terms for Maryland (and U.S.) library access to digital works. Three of the Big 5 publishers (Macmillan Publishers, Penguin Random House, and Hachette Book Group) are owned or controlled by corporations outside of the United States (Holtzbrinck Publishing [Germany]; Bertelsmann [Germany]; and Hachette Livre [France] respectively). A

fourth, HarperCollins, is owned by News Corporation, initially based in Australia and now an international corporation. (Simon & Schuster is a subsidiary of ViacomCBS.)

14. The AAP Complaint and Motion for Preliminary Injunction mischaracterizes the Maryland Act, Ch 411, Laws of Maryland 2021. The Act seeks to prevent unreasonable discrimination against libraries with respect to ebook licensing practices and return the centuries old balance that has existed between publishers and libraries. A publisher is not required to license its books in ebook format to Maryland public libraries. But if it licenses its ebooks in Maryland to the public, it must also offer to license them to libraries on reasonable terms. This is an invitation to negotiate the reasonable terms of the license. Maryland law simply takes a reasonable step toward reinstating the general public's fair access to digital content through the library by requiring publishers to offer a license to public libraries upon reasonable terms when it offers a license to the general public.

15. Libraries and their associations are prepared to negotiate in good faith to reach terms that are acceptable to all parties. Enforcement actions are the last, and least desirable, resort. However, as with print materials, libraries must be accorded with the ability to acquire digital materials under reasonable terms when such materials are offered to the public. Such ability is fundamental to the functioning of a library to serve its community—and especially our fellow residents who need help the most because they have modest means.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

January 13, 2022                                        *Alan S. Inouye*

Date                                                                 Alan Inouye