IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASSOCIATION OF AMERICAN
PUBLISHERS, INC.,

          Plaintiff,

v.

BRIAN E. FROSH, in his official capacity as
Attorney General of the State of Maryland,

          Defendant.

Civil Action No. 1:21-cv-03133-DLB

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER**

     Plaintiff, Association of American Publishers, Inc. ("AAP"), by and through its undersigned counsel, hereby replies to Defendant's response to the Court's March 28, 2022 order to show cause why the preliminary injunction entered on February 16, 2022 should not be converted into a permanent injunction.

**PRELIMINARY STATEMENT**

     A permanent injunction, as opposed to just the entry of a declaratory judgment, is the necessary and appropriate next step in this case. All legal issues have been resolved, no factual determinations are needed, and the standards for permanent injunctive relief have been met.

     The State acted contrary to law in enacting the Maryland Act, disregarding the critically important preemption issues that the publishing and author communities had brought to its attention. The State then "doubled down" on its defense of the Maryland Act in this proceeding, raising a host of invalid arguments about the State's authority and aggressively questioning both the principles and operation of the Nation's federal Copyright Act. At each turn, the State's actions reflected an unwillingness to respect the judgment of the United States Congress on

copyright policy and the boundaries between states and the federal government under the

Supremacy Clause of the United States Constitution.  In a well-reasoned and carefully drafted

opinion, this Court found that AAP "*clearly* satisfied the four preliminary injunction factors" and

that it was "*clear* the Maryland Act likely stands as an obstacle to the accomplishment of the

purposes and objectives of the Copyright Act."  Dkt. 19 at 10, 12 (emphasis added).

The State did not appeal the issuance of the preliminary injunction.  And the State now

"acknowledges that there is no genuine dispute as to any material fact and that the Court may

grant or deny further relief in this matter without a further hearing or trial."  Dkt. 23 at 1.  Yet

despite acknowledging that all legal issues have been resolved and that no further hearing or trial

is necessary, the State asks the Court to *not* enter a permanent injunction, because entry of a

declaratory judgment is somehow "sufficient."  Dkt. 23 at 2.  The State is mistaken.

The appropriate next step, which courts routinely implement in similar situations, is to

issue both a permanent injunction prohibiting enforcement of the Maryland Act *and* to enter a

declaratory judgment that the Maryland Act is preempted by the U.S. Copyright Act.

Defendant's assertion that the State "is not enforcing the Maryland Act and has no intention to

do so" (Dkt. 23 at 6) is immaterial and does not support entry of a declaratory judgment alone.

Bald assertions of a defendant—whether governmental or private—that it will not proceed with a

challenged policy or law does not moot the need for injunctive relief.  Importantly, the Fourth

Circuit has held that a defendant's discontinuance of a challenged activity, when taken in

response to a litigation, does not eliminate a plaintiff's reasonable expectation that the violation

will recur in the absence of a court order.

Indeed, Defendant has provided no assurance that the Maryland Act will never be

enforced.  The State has not taken any action to repeal the Maryland Act.  Moreover, Defendant

offers only attorney argument for the proposition that the State "does not intend" to enforce the

Maryland Act.  Dkt. 23 at 2.  Intentions can change.  Federal preemption, the publishers' and

authors' federally protected exclusive copyright rights, and the lives and industries built around a

carefully calibrated, uniform federal system for copyright protection are much too important to

be left to chance.  An injunction precludes the State from enforcing the Maryland Act, period.  It

is of little solace that, under a declaratory judgment, publishers may be able to "swiftly return to

court and seek appropriate relief, if necessary."  Dkt. 23 at 5.  As this Court correctly noted, "the

harm [to the publishers] does not hinge on mere enforcement of the penalty provisions" but

"stem[s] even from a publisher's choice to comply with the Act."  Dkt. 19 at 25.

## ARGUMENT

In its Show Cause Order, the Court placed the burden on Defendant, not AAP, to show

cause why the preliminary injunction should not be converted into a permanent injunction.  Dkt.

22.  As explained below, by no measure has the State satisfied its burden to show cause why a

permanent injunction should not issue.

### I.       The Requisite Factors for a Permanent Injunction Are Satisfied

The Court already found that AAP "clearly satisfied" the four preliminary injunction

factors and "[t]he standard for a preliminary injunction is essentially the same as for a permanent

injunction" except that a plaintiff must show "actual success."  *Winter v. Nat. Res. Def. Council,
Inc.*, 555 U.S. 7, 32 (2008) (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546,

n.12 (1987)).  AAP has shown "actual success" because, as the State concedes, there are no

material issues of fact left to be decided and thus no other evidence for the court to consider.  *See

e.g.*, *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 909 (10th Cir.

2022) (reversing district court decision denying preliminary injunction and remanding with

instructions to enter permanent injunction where plaintiff showed "actual success" because plaintiff's "argument involves a pure legal issue about the applicability of a federal statute, making it a good candidate for a merits decision . . ."); *The Shell Co. (Puerto Rico) v. Los Frailes Serv. Station, Inc.*, 605 F.3d 10, 19, n.4 (1st Cir. 2010) (affirming district court decision to convert preliminary injunction into a permanent injunction "after issuing a show cause order to [defendant], and only after determining that [defendant] had not advanced any new evidence or legal arguments beyond what it had presented at the preliminary injunction hearing" because "[u]nder those circumstances, an evidentiary hearing would have served little purpose. . .").

The State concedes that AAP has met the standard for issuance of a permanent injunction, including actual success, but argues "the Court should exercise its discretion to issue a declaratory judgment instead of converting the preliminary injunction into a permanent injunction." Dkt. 23 at 2.  But as the case law instructs, a declaratory judgment alone is not a sufficient remedy.

**II.        Conversion to a Permanent Injunction is Appropriate and Routine**

Courts routinely convert preliminary injunctions into permanent injunctions especially where no triable issues of fact are involved.  *Moog, Inc. v. Lunin*, 285 F. App'x 73, 74 (4th Cir. 2008) (affirming district court decision converting preliminary injunction into permanent injunction); *Los Frailes Serv. Station, Inc.*, 605 F.3d at 19, n.4 (converting preliminary injunction into permanent injunction where defendant "had not advanced any new evidence or legal arguments"); *ICENY USA, LLC v. M&M'S, LLC*, No. CV TDC-19-2418, 2020 WL 1890511, at *4 (D. Md. Apr. 16, 2020) (converting preliminary injunction into a permanent injunction); *Backpage.com, LLC v. Cooper*, No. 3:12-CV-00654, 2013 WL 12308501, at *1–2 (M.D. Tenn. Mar. 19, 2013) (converting preliminary injunction into permanent injunction where defendant

"admitted the case not does present any fact issues" and "acknowledged that the Court had decided all legal issues").

This remains true in the context of cases enjoining state laws.  *United Food & Com. Workers Loc. 99 v. Bennett*, 934 F. Supp. 2d 1167, 1188 (D. Ariz. 2013) (converting preliminary injunction against enforcement of a state law into a permanent injunction where "Court ha[d] already granted [plaintiffs] a preliminary injunction against enforcement of [the state law,]" "no material issue of fact exist[e]d" and "nothing in the record indicate[d] that the circumstances have changed."); *Backpage.com, LLC*, 2013 WL 12308501, at *1-2 (M.D. Tenn. Mar. 19, 2013) (converting preliminary injunction into permanent injunction where court held that plaintiff was "likely to succeed on all of its claims, specifically finding that the [state law at issue] is likely preempted"); *Florida Retail Fed'n, Inc. v. Att'y Gen. of Fla.*, 576 F. Supp. 2d 1301, 1303 (N.D. Fla. 2008) (converting preliminary injunction into permanent injunction and enjoining Attorney General from enforcing certain parts of a Florida statute).

### III.     Fourth Circuit Case Law Instructs that Permanent Injunctive Relief is Not Moot and Indeed is Appropriate Here

Fourth Circuit case law, which the State did not address, wholly negates the State's theory that the need for permanent injunctive relief is moot.  Fourth Circuit case law instructs that a permanent injunction is, in fact, the appropriate relief here.

In *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001), the Fourth Circuit held that the district court "misconstrue[d] the legal principles applicable to the issuance and denial of injunctions" when it denied injunctive relief on the principle of voluntary cessation.  In reversing the district court's denial of injunctive relief, the Fourth Circuit explained that the defendant's "[bald] assertions [that it would stop the unlawful activity], standing alone, cannot eliminate the plaintiff's reasonable expectation that the alleged violation will recur in the

absence of a court order." *Id.* at 800-01.  The Fourth Circuit noted that this is true when "the reason why [defendant] stopped [the unlawful activity] was because of [a related lawsuit seeking to prohibit similar infringing acts]." *Id.*

Here, the State has not enforced the Maryland Act, and purportedly "intends" not to, precisely because of this litigation.  The decision to cease an action because of an ongoing court proceeding cannot be classified as "voluntary," especially when the State does not even concede that the Maryland Act is invalid.  *See id.* (explaining that defendant stopped the infringing activity but continued to deny infringement and thus could not "make an affirmative showing that continuing infringement was, practically speaking, nearly impossible").

Subsequent case law in the Fourth Circuit also supports issuance of a permanent injunction here.  *See Wall v. Wade*, 741 F.3d 492, 496-98 (4th Cir. 2014) (vacating district court decision that injunctive relief was moot and explaining that "[u]nsubstantiated assurances in their [] brief aside, the defendants have failed to put forth even a single piece of evidence establishing that the [unlawful activity] has been terminated once and for all" and "bald assertions of a defendant—whether governmental or private—that it will not resume a challenged policy fail to satisfy any burden of showing that a claim is moot."); *Davison v. Plowman*, 191 F. Supp. 3d 553, 557-58 (E.D. Va. 2016) ("[i]njunctive relief remains an effectual remedy" and "[e]ven if [defendant cured its past unlawful acts], that act did not moot [plaintiff's] claim for injunctive relief . . . [because defendant] bears the formidable burden of persuading the Court that he cannot be reasonably expected to [engage in that unlawful activity again]" and explaining that "[c]ourts considering whether voluntary cessation moots a claim often look for a change in official policy or law, or some other external constraint on the defendant's action, such as a collateral court order.") (citations omitted)); *Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin*, *LLC*,

6

747 F. Supp. 2d 568, 582 (W.D.N.C. 2010) (granting permanent injunction and explaining that

defendant's discontinuance of infringement "does not foreclose the possibility of injunctive

relief.  As the Fourth Circuit has recognized, a defendant's 'voluntary discontinuance of

challenged activities' does not necessarily moot a request for injunctive relief unless 'there

is *no* reasonable expectation that the wrong will be repeated'" and "[here, defendant] could

revert to [the infringing activity] at any time.") (citing *Lyons P'ship, L.P.*, 243 F.3d at 800

(citation and internal quotation marks omitted)).

The State argues that because the State has not yet enforced the Maryland Act and does

not "intend" to, AAP's request for injunctive relief is moot.  Dkt. 23 at 6-7.  But, as highlighted

above, the voluntary cessation exception "is just that—an exception—and defendants face a

heavy burden to establish mootness in such cases because otherwise they would simply be free to

return to [their] old ways[] after the threat of a lawsuit has passed." *Lyons P'ship, L.P.*, 243 F.3d

at 800 (citations omitted); *Wall*, 741 F.3d at 496-98 ("The 'heavy burden of persua[ding]' the

court that the challenged conduct cannot reasonably be expected to start up again lies with the

party asserting mootness.") (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,

528 U.S. 167, 189 (2000)).  The State has not met this stringent burden.

The State only offers its "intent" to not enforce the Maryland Act, as manifested in a

legal brief, and asserts that the Maryland Act has not yet been enforced in the mere four months

since it became effective.  Dkt. 23 at 2.  But as the preceding case law illustrates, this is not

remotely enough for the voluntary cessation exception to apply.

The State's case law does not support its position.  For example, in *Poder in Action v.

City of Phoenix*, No. CV-20-01429-PHX-DWL, 2020 WL 7245072 (D. Ariz. Dec. 9, 2020), the

court did not issue a permanent injunction to bar the city from excluding noncitizens from

receiving assistance under the Coronavirus Aid, Relief and Economic Security Act.  But in that case, the court had *declined to issue a preliminary injunction*, never finding that plaintiff had met the four injunction factors, and in particular, that it had not shown irreparable harm.  *Id*., at *1. In addition, the city indicated that it would start allowing unqualified aliens to participate in the relief program once the declaratory judgment issued.  *Id*., at *9.  Here, the court has already found that AAP "clearly satisfied" the four preliminary injunction standards, including that the harm to copyright holders is "actual and imminent."  Dkt. 19 at 25.  And unlike the city in *Poder* who indicated it would take well-defined action upon issuance of a declaratory judgment, the State here has offered no guarantee, within the context of this litigation or outside of it, that the Maryland Act will be repealed.  In fact, the State has not even acknowledged that the Maryland Act is invalid, which belies its "intent" to not enforce the law.  As the case law recognizes, parties' intentions and opinions could change, such that they "do not provide adequate protection of [plaintiff's] rights."  *Human Rts. Def. Ctr. v. Southwest Virginia Reg'l Jail Auth.*, 448 F. Supp. 3d 581, 585-86 (W.D. Va. 2020).

Similarly, in *Dominion Transmission, Inc. v. Town of Myersville Town Council*, 982 F. Supp. 2d 570 (D. Md. 2013), the court denied permanent injunctive relief but issued a declaratory judgment because plaintiff had not met all four injunction factors since there was "no threat of imminent harm."  *Id*. at 580.  But again, here the Court has already found that the "harms the publishers likely will suffer if they comply with the Act are actual and imminent" and "while there is no indication that [the Maryland Act] has been enforced since it took effect, there is every reason to believe it will be."  Dkt. 19 at 25.  Indeed, it was only after issuance of the preliminary injunction that the State declared its intent not to enforce the Maryland Act.  It did not act voluntarily.

8

*Freedom from Religion Found. v. Concord Cmty. Sch's.*, 240 F. Supp. 3d 914 (D. Ind. 2017), another case relied on by the State, concerned whether a school's Christmas show, which incorporated a nativity scene, violated the Establishment Clause.  In that case, the defendant argued the case was moot because the school had later produced a new version of the show that did not violate the Establishment Clause and represented that it had "decided not to present those [unlawful] versions of the show in the future." *Id*. at 917.  But the court rejected that argument, explaining that the "[t]he School has not identified any case where an informal assurance of this sort supported a finding of mootness by voluntary cessation." *Id*. at 919.  The court issued a declaratory judgment and declined to issue a permanent injunction because the permanent injunction sought was "overbroad [as] it sought to bar the school from. . . present[ing] *any* portrayal of a nativity scene" and also because the school's superintendent had provided a statement "under oath that the school will not present the [unlawful] versions of the show in the future" and had "followed through on their commitment [not to do so] in the [subsequent] show." *Id*. at 925.  The State has not provided any such reassurance here, and even if it had, that would not be enough to moot the need for a permanent injunction, as the Fourth Circuit explained in *Lyons* and subsequent Fourth Circuit decisions relying on that case.

## CONCLUSION

A permanent injunction is necessary so copyright holders can exercise their exclusive copyright rights without fear of liability from the Maryland Act.  Nor will a permanent injunction harm or inconvenience the State, which has no legitimate interest in being precluded from enforcing an invalid state law that it says it "does not intend" to enforce.  Under Fourth Circuit law, a permanent injunction is appropriate.  Upon entry of judgment for Plaintiff, along with a permanent injunction, the only remaining issue for resolution will be AAP's request to recover

9

its costs, including reasonable attorney's fees.  For reasons AAP will explain, an award of costs

and fees is both justified and critically important here.  The parties have previously discussed

submitting a stipulated proposed schedule for briefing.


Dated: April 25, 2022                                      Respectfully submitted,

                                                           */s/ Scott A. Zebrak*
                                                           Scott A. Zebrak (17741)
                                                           Matthew J. Oppenheim (22256)
                                                           Nicholas C. Hailey
                                                           Carly A. Kessler
                                                           Ever M. Hess
                                                           **OPPENHEIM + ZEBRAK, LLP**
                                                           4530 Wisconsin Avenue, NW, 5th Floor
                                                           Washington, DC 20016
                                                           Phone: (202) 480-2999
                                                           scott@oandzlaw.com
                                                           matt@oandzlaw.com
                                                           nick@oandzlaw.com
                                                           carly@oandzlaw.com
                                                           ever@oandzlaw.com

                                                           *Attorneys for Plaintiff Association of*
                                                           *American Publishers, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all counsel of record entitled to service.

                                     */s/ Scott A. Zebrak*

                                     Scott A. Zebrak (17741)